**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-02663-REB-MEH

DEMPSEY ALEXANDER KENNEDY, and
CRYSTAL PHIFER,

      Plaintiffs,

v.

CORRECTIONS CORPORATION OF AMERICA, a Tennessee corporation, and
TAMMY MOSNESS, an individual,

      Defendants.
      Defendant.

## ORDER DENYING MOTION TO DISMISS

**Blackburn, J.**

The matter before is **CCA Defendants' Motion To Dismiss Amended Complaint** [#33],[1] filed May 1, 2012.  I deny the motion.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) & 1367 (pendant state law claims).

### II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove

---

[1] "[#33]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

no set of facts in support of his claim which would entitle him to relief.'" ***Kansas Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Pursuant to the dictates of ***Twombly***, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Twombly***, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." ***Kansas Penn Gaming***, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted). ***See also Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of

the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949.  **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965).  The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.**

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn Gaming**, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." **Dias v. City and County of Denver**, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting **Twombly**, 127 S.Ct. at 1965) (internal quotation marks omitted).

## III.  ANALYSIS

At all times relevant to this lawsuit, plaintiff Dempsey Alexander Kennedy was an inmate at the Kit Carson Correctional Center ("KCCC").  On September 22, 2009, two pieces of mail addressed to Mr. Kennedy were received by the KCCC mailroom and, pursuant to prison regulations, opened for inspection.  The envelopes bore the logo of an Aurora branch of TCF Bank, and one also displayed a stamp showing plaintiff Crystal Phifer's name.  (*See* **Am. Compl.**, ¶ 12 at 2 & Exh. A.)  Ms. Phifer, a branch manager for TCF Bank, was "romantically involved" with Mr. Kennedy.[2]

The envelopes contained nude photographs, which were not contraband under applicable Department of Corrections regulations.  Nevertheless, noting the use of a business envelope, the mailroom clerk asked defendant Tammy Mosness, the facility investigator, to review the correspondence.  Unsure why a bank employee would be sending nude photographs to an inmate or whether Mr. Phifer had permission to do so, Ms. Mosness obtained the phone number for the Aurora, Colorado, branch bank and called Ms. Phifer's supervisor, Kay Anderson.  At Ms. Anderson's request, Ms. Mosness copied the contents of the correspondence from Ms. Phifer to Mr. Kennedy and forwarded it to Ms. Anderson.  The original correspondence was forwarded to Mr. Kennedy that same day, albeit without any indication that it had been copied and sent to Ms. Anderson.

The following day, Ms. Phifer was terminated from her job at TCF Bank.  This lawsuit followed.  Herein, plaintiffs allege violations of their First Amendment rights of

---

[2] Plaintiffs are now married.  (**Am. Compl.** ¶ 1 at 1.)

4

freedom of speech and association, as well as state law claims of tortious interference with contract and negligent training.  They claim that the corporate defendant, Corrections Corporation of America ("CCA") is liable for the acts of its employee, Ms. Mosness, under the doctrine of *respondeat superior*.[3]

Defendants' motion to dismiss is based on their insistence that plaintiffs' claims all require proof that the communications in question were disclosed to a third party.  From this premise, defendants conclude that plaintiffs fail to state viable causes of action because TCF Bank was not a third party with respect to the communications sent to Mr. Kennedy.  This argument ignores the allegations of plaintiffs' Amended Complaint, which quite clearly asserts that Ms. Mosness knew Ms. Phifer to be the person who sent the correspondence to Mr. Kennedy.  (**See Am. Compl.** ¶ 12 at 2 & ¶ 17 at 3.)[4]  While Ms. Mosness is alleged to have had some question whether Ms. Phifer was authorized to use TCF stationery for personal correspondence, nothing in the Amended Complaint suggests that she had any reasonable belief that the correspondence was business-related or that the bank *qua* bank was the sender.  Indeed, plaintiffs allege that Ms. Mosness sought out and spoke with Ms. Phifer's supervisor, further supporting the reasonable inference that she knew Ms. Phifer

---

[3] Of course, this theory applies only to plaintiffs' state law claims, as there is no *respondeat superior* liability for violations of constitutional rights pursued under section 1983.  ***Trujillo v. Williams***, 465 F.3d 1210, 1228 (10th Cir. 2006); ***see also Smedley v. Correctional Corporation of America***, 175 Fed. Appx. 943, 946 (10th Cir. Dec. 20, 2005) ("[A] private actor such as CCA 'cannot be held liable solely because it employs a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory.'") (citation omitted).

[4] Indeed, one of the envelopes received at KCCC, which is appended to the Amended Complaint, bears a stamp with Ms. Phifer's name quite clearly displayed underneath the TCF Bank logo.  (**See Am. Compl.**, Exh. A.)

5

specifically to be the source of the correspondence.  (*See id.*, ¶¶ 18-19 at 3.)[5]

      Defendants also maintain that Ms. Mosness's disclosure to TCF Bank did not interfere with Ms. Phifer's First Amendment right to communicate with Mr. Kennedy, since he ultimately received the correspondence.  However, the relevant question is whether Ms. Mosness's actions in disclosing the contents of the correspondence to Ms. Phifer's employer would have a chilling effect on plaintiffs' First Amendment rights. ***Laird v. Tatum***, 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972) ("[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights.").  Certainly, the constitutional rights of private citizens who correspond with incarcerated individuals may be circumscribed by regulations reasonably related to legitimate penological interests.  ***See Turner v. Safely***, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).  Prison officials' rights to intercept and examine incoming mail, however, does not necessarily extend to publicizing private correspondence to a third party.  ***See Trudeau v. Wyrick***, 713 F.2d 1360, 1366 (8th Cir. 1983); ***Nakao v. Rushen***, 635 F.Supp. 1362, 1365 & n.6 (N.D. Cal. 1986).[6]  ***See also Jolivet v. Deland***, 966 F.2d 573, 576 (10th Cir. 1992) (judgment entered on behalf of

---

[5] Defendants' suggestions that "the envelope clearly indicates that the correspondence was from TCF Bank with no indication that the correspondence was personal in nature or otherwise not a transaction involving TCF Bank" and that "[t]he correspondence was only disclosed to TCF Bank officials since [it] concerned activities of TCF Bank" are patently ludicrous.  (Def. Reply at 4 [#35], filed May 25, 2012.)  Once Ms. Mosness opened the envelope, it was obvious that the contents were not business related, and it does not require a particular pleading to conclude that the business activities of any bank do not involve the transmission of nude photographs to anyone.

[6] Moreover, as the district court in ***Nakao*** noted, "[w]hat distinguishes personal from official letters is the content of the documents, not such an irrelevancy as the letterhead."  ***Nakao***, 635 F.Supp. at 1365 n.9.

prisoner against Department of Corrections investigator who revealed personal correspondence between plaintiff and his girlfriend to another prisoner; plaintiff "had a reasonable expectation that [his] innocent letters w[ould] not be used to general investigative purposes") (citation and internal quotation marks omitted).  ***Cf. Gassler v. Wood***, 14 F.3d 406, 409 (8th Cir. 1994) (disclosure of prisoners' correspondence to chief investigator of criminal charges against them not a violation of First Amendment where investigator shared same security objectives as justified prison officials' right to examine mail in first instance; noting, however, that if prison officials had shared correspondence with "unauthorized persons . . . the situation might be different").

For these reasons, I find and conclude that plaintiffs have stated viable claims on which relief may be granted, and that defendants' motion to dismiss accordingly must be denied.[7]

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** that **CCA Defendants' Motion To Dismiss Amended Complaint** [#33], filed May 1, 2012, is **DENIED**.

Dated November 20, 2012, at Denver, Colorado.

**BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge

---

[7] Defendants assert no claim to qualified immunity on behalf of Ms. Mosness, and I therefore do not address the matter.